UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RUFUS L. SPEARMAN,

        Plaintiff,

v.

CHAD H. WILLIAMS et al.,

        Defendants.
_____/

Case No. 1:17-cv-1070

Honorable Janet T. Neff

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Osbourne, Gehoski, Ley, Shinaberg, and Krick. The Court also will dismiss all claims against Defendants Williams, Fenby, and Youngert that accrued before July 24, 2014. The Court will serve the remainder of the amended complaint against Defendants Williams, Fenby, and Youngert.

**Discussion**

I.     **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues the following DRF officials: Assistant Resident Unit Supervisors (ARUSs) Chad H. Williams and (unknown) Gehoski; Correctional Officers (unknown) Osbourne, (unknown) Ley, and (unknown) Youngert; Deputy Wardens David Fenby and (unknown) Krick; and Lieutenant (unknown) Shinaberg.

In his amended complaint, Plaintiff describes a series of alleged acts of retaliation, beginning on April 21, 2014, and ending on August 27, 2014, all allegedly arising out of grievances Plaintiff filed concerning his lack of religious accommodations and staff corruption involving misuse of the prisoner telephone system. Plaintiff contends that all Defendants thereafter conspired to engage in an "orchestrated campaign of harassment . . . in the form of threats, verbal abuse, taunting, property deprivations, and sexual harassment." (Am. Compl., ECF No. 8, PageID.45.)

Plaintiff chronicles a series of events which occurred in the three-plus weeks preceding the first alleged retaliatory action by Defendants. Plaintiff filed a grievance against the DRF chaplain Susan Cleveland (not a Defendant) on March 26, 2018, for failing to respond to his requests for religious accommodation. Two days later, Plaintiff filed a grievance against unnamed MDOC officials and the telephone company about the telephone system. On April 1, 2014, Plaintiff sent copies of the telephone grievance to various state and federal authorities and the

MDOC director. One week after filing his third grievance, on April 8, 2014, Plaintiff was attacked by two inmates. Plaintiff does not allege that any Defendant induced that attack or was aware that it would happen. On April 13, 2014, Plaintiff filed a second grievance about his religious accommodations. He filed a Step-II appeal of his second grievance on April 18, 2014.[1]

On April 21, 2014, Defendant Ley informed Plaintiff that he was being moved to the 500 Housing Unit. Plaintiff told Ley that he could not be moved to Unit 500, because other inmates were calling him names, such as "coward" and "p*ssy," and threating to "whup" him for not fighting back when he was attacked on April 8, 2014. (*Id.*, PageID.49-50.) Plaintiff had concluded that he would not be safe in the 500 Unit. Defendant Ley responded that they were moving Plaintiff into the unit in place of a prisoner who had been causing problems. Plaintiff contends that Ley's response indicated that they could have chosen anyone to move, but chose Plaintiff in retaliation for his having filed multiple grievances. Plaintiff alleges that, as he was being moved 20 minutes later, prisoners yelled threats and taunted him. Plaintiff suggests that the taunts indicate that other prisoners had been made aware that he was being transferred to the unit.

Once he arrived at the control center, Plaintiff discussed his concerns with Defendant Shinaberg. He then waited for several hours until Defendant Gehoski arrived. Gehoski explained that Plaintiff was being moved from Unit 1200 to Unit 500 because there was a problem managing a prisoner in Unit 500. Plaintiff advised Gehoski about his safety concerns, but Gehoski

---

[1] Under Michigan Department of Corrections Policy Directive 03.02.130 (effective March 5, 2007), inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. If the inmate is dissatisfied with the Step II response, or if he does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ T, FF.

did not change the assignment. Three days later, on April 24, 2014, Plaintiff was taunted for more than an hour by a gang member, who was being egged on by others. When Plaintiff turned his back, the gang member attacked Plaintiff, forcing Plaintiff to fight for his life. Plaintiff suffered damage to his left eye, his temporal bone, and his vision, as well as a severely dislocated thumb. The following morning, after being let out of his room, Plaintiff notified Officers Hengesbach, and Thomsen (not Defendants) and Defendants Osbourne and Williams. When he asked for a change in room, Hengesbach told Plaintiff to deal with it and not ask to be moved again. When Plaintiff later asked Hengesbach, Thomsen, and Defendant Osbourne, Hengesbach unholstered his taser and suggested that he would test it.

As Plaintiff left Hengesbach's office, he saw Defendant Williams, who was leaving the unit. Williams responded, "[I]'m leaving, I don't give a f**k if you kill each other. It's not my problem, it's your problem." (*Id.*, PageID.52.) Plaintiff then refused to return to his dangerous living situation, for which he was issued a misconduct ticket. He was escorted to the control center, where he explained his concerns to Defendants Krick, Williams, and Osbourne, as well as an unknown captain. Plaintiff was instructed to write a statement requesting protective custody. After he did so, he was moved to a different room on a different wing in Unit 500.

Defendants Hengesbach and Osbourne packed Plaintiff's property for the move, but when Plaintiff received it later that day, he was missing his television, his religious scrolls, and his shoes. At breakfast, Plaintiff notified Sergeant Collins (not a Defendant) of his missing property. While he was eating, Plaintiff spotted the inmate who had attacked him, who was wearing Plaintiff's shoes. Plaintiff confronted the man, who told Plaintiff that Defendant Osbourne had left them behind when he packed up Plaintiff's property. Plaintiff demanded that the prisoner return his shoes, which the prisoner promised to do when he returned to the unit.

4

When Plaintiff returned to the unit, he confronted Defendants Osbourne and Hengesbach, telling them that the other prisoner had informed him that Osbourne and Hengesbach had left Plaintiff's shoes and Plaintiff's television in the cell. Osbourne started yelling, "[H]e's a f**king rat Hengesbach! He's a snitch." (*Id.*, PageID.54.) This occurred during mass movement, causing many prisoners to overhear. Minutes later, Defendant Youngert returned Plaintiff's television, but Plaintiff never received his religious scrolls, which allegedly deprived Plaintiff from practicing his Nuwaubian religion.

The following day, April 25, 2014, Plaintiff's newly assigned roommate threatened to kill Plaintiff for attempting to connect his television cable cord to the wall outlet. The man stated, "[Y]ou got nothing coming . . . C/O's say you bold." (*Id.*, PageID.55.) Plaintiff contends that the word "bold" is used regularly by corrupt officials when a prisoner is disfavored, and its use leads to inmate attacks, withholding of mail, food contamination, and refusals to open the cell door for appointments. On May 14, 2014, Defendant Williams refused to process a disbursement request for Plaintiff, preventing him from mailing some Step-II grievance appeals to another prison. When Plaintiff continued to ask for the disbursement, Defendant Williams responded, "Will someone taze this m***erf**ker and get him out of here." (*Id.*) When Plaintiff turned around, he nearly ran into Defendant Osbourne, who was pointing his taser at Plaintiff.

Plaintiff filed a grievance on May 16, 2014, against Defendants Gehoski, Shinaberg, Ley, Fenby, Williams, Krick, and any other person involved in the decision to transfer him to Unit 500. He filed another grievance on June 2, 2014, against health services, alleging that he had been denied medical treatment for an unspecified need. On July 6, 2014, he filed another grievance against Defendant Osbourne for unspecified retaliatory harassment.

On July 22, 2014, while Plaintiff was leaning over a table to sign a receipt, Defendant Youngert walked up to him and stopped, with his crotch near Plaintiff's face. Plaintiff stood up and stepped away, telling Youngert that he objected to having his "personal space" violated. (*Id.*, PageID.56.) Youngert responded, "[I]'ll violate whatever I want to violate, you just have to deal with it." (*Id.*) Youngert began to walk toward Plaintiff, and Plaintiff retreated to his room. Plaintiff filed a grievance against Youngert three days later. Two weeks later, on August 7, 2014, Plaintiff filed another grievance, alleging that Youngert and Williams had conspired to increase Plaintiff's security classification because Plaintiff had filed the grievance against Youngert on July 25, 2014. Plaintiff also alleged in his August 7 grievance that Fenby had threatened to effectuate Youngert's and Williams' retaliation by making the following statement: "[T]his don't sound right [the recommendation by defendant Williams], but you can believe [I]'m gonna' lay you down." (*Id.*, PageID.57.)

On August 18, 2014, Defendant Youngert allegedly attempted to provoke Plaintiff into an act of aggression. Youngert verbally berated Plaintiff and spit in Plaintiff's face twice, saying, "[W]hat you gone do b**ch, [I]'ll f**k you up." (*Id.*) Plaintiff remained calm. He filed a grievance against Youngert on August 19, 2014. The grievance was assigned to Resident Unit Manager J. Dunigan. The following day, Defendants Williams and Fenby increased Plaintiff's security classification and transferred him to a Level V prison. The change to Plaintiff's classification and prison assignment resulted in the confiscation of the majority of his personal property, including his beard trimmer, watch, and personal clothing. Plaintiff also was subjected to greater restrictions on his movements and fewer privileges.

Plaintiff contends that Defendants Gehoski, Shinaberg, Ley, Fenby, Williams, and Krick deprived him of his First Amendment right to be free from retaliation for filing grievances

6

about his religious accommodations and the telephone system. He also alleges that the same Defendants were deliberately indifferent to his safety and security, in violation of the Eighth Amendment. Plaintiff argues that Defendant Osbourne was deliberately indifferent to his safety when Osbourne loudly called Plaintiff a rat and a snitch in the presence of other prisoners. In addition, he complains that Defendants Osbourne, Williams, and Youngert subjected him to a campaign of verbal harassment, sexual harassment, and property deprivation in retaliation for formally complaining about prison conditions and mistreatment, in violation of his right to equal protection. Further, he alleges that Defendant Williams, by attempting to change Plaintiff's security classification, retaliated against him as part of a conspiracy. Plaintiff also alleges that Defendant Youngert violated Plaintiff's Eighth Amendment rights by spitting in his face and making verbal threats of further assault. Plaintiff complains that Defendants Fenby and Williams retaliated against him for filing grievances when they increased his security level and transferred him to a Level-V prison. Finally, Plaintiff argues that Defendant Osbourne placed a substantial burden on his right to the free exercise of his religion when Osbourn discarded or gave away Plaintiff's religious reading materials.

Plaintiff seeks injunctive relief, in the form of either a special accommodation for a single occupancy room or a suspension of his sentence, and he asks for $2 million in compensatory and punitive damages.

   II.   <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

7

more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A. Statute of limitations

All of the actions about which Plaintiff complains occurred in 2014. Most of those actions occurred between April 21 and May 13, 2014, and the latest action, his reclassification and transfer occurred on August 22 and 27, 2014.

State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[2]

Many of Plaintiff's claims are untimely. All of the actions about which Plaintiff complains occurred between April and August, 2014. Plaintiff had reason to know of the "harms" done to him at the time they occurred. Hence, his claims accrued when they occurred in 2014. However, Plaintiff did not file his complaint until October 22, 2017,[3] beyond Michigan's three-

---

[2] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under 28 U.S.C § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

[3] Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner dated his application on October 22, 2017, and it was received by the Eastern District of Michigan on October 26, 2017. Thus, it must have been handed to prison officials for mailing at some time between those dates. For purposes of this opinion, the Court has given Petitioner the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

year limit for all of Plaintiff's claims. Nevertheless, the statute of limitations is tolled for the period during which a plaintiff's available state remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000). Plaintiff appears to have filed grievances concerning all of the alleged violations, though he does not indicate when those grievances were resolved through Step III of the grievance process. However, under MDOC policy, "[t]he total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 90 calendar days unless an extension has been approved . . . ." MICH. DEP'T OF CORR., POLICY DIRECTIVE 03.02.130 ¶ S. As a result, the only timely claims in Plaintiff's complaint are those that occurred within 3 years and 90 days before the date he filed his original complaint, October 22, 2017.

Moreover, no other tolling provision appears available to Plaintiff. Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* Mich. Comp. Laws § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

Thus, to be timely filed, Plaintiff's claims must have occurred on or after July 24, 2014. The only incidents alleged by Plaintiff that are not time-barred are the following: (1) Plaintiff's claim that, on August 7, 2014, Defendant Fenby agreed to support Youngert's and Williams's recommendation to change Plaintiff's security classification, even though it did not appear appropriate; (2) Plaintiff's claim that, on August 18, 2014, Defendant Youngert verbally abused him, spit in his face, and threatened to hurt Plaintiff if he responded to the provocation; and (3) Plaintiff's claim that, on August 26, 2014, in retaliation for Plaintiff's grievances, Defendants

Williams and Fenby increased Plaintiff's security classification, and they transferred Plaintiff to a Level-V prison.

The Court therefore will dismiss for failure to state a claim all of Plaintiff's claims that accrued before July 24, 2014, because they are barred by the statute of limitations. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) (holding that, "[i]f the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim"). Because all of Plaintiff's claims against Defendants Osbourne, Gehoski, Ley, Shinaberg, and Krick accrued before July 24, 2014, the Court also will dismiss these Defendants, because Plaintiff's claims against them are barred by the statute of limitations.

B. Remaining claims and Defendants

Upon review, the Court concludes that Plaintiff's allegations against Defendants Williams, Fenby, and Youngert that occurred on July 24, August 7, and August 14, 2014, are sufficient to warrant service of those claims.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Shinaberg, Osbourne, Gehoski, Ley, and Krick will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court also will dismiss all claims against Defendants Williams, Fenby, and Youngert that accrued before July 24, 2014. The Court will serve the remainder of the amended complaint against Defendants Williams, Fenby, and Youngert.

An Order consistent with this Opinion will be entered.

Dated:  December 19, 2017                         /s/ Janet T. Neff
                                                                                  Janet T. Neff
                                                                                  United States District Judge