UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUFUS L. SPEARMAN #320836,

        Plaintiff,                                      Hon. Janet T. Neff

v.                                                  Case No. 1:17-cv-1070

CHAD H. WILLIAMS, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

      This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by a prisoner incarcerated with the Michigan Department of Corrections (MDOC) based on events that occurred while Plaintiff was housed at Carson City Correctional Facility (DRF) in 2014. Presently before me is Defendants' Motion for Summary Judgment. (ECF No. 106.) In a previous Report and Recommendation issued February 6, 2020 (ECF No. 78) (the 2020 R&R), I recommended that the Court grant Defendants' motion for summary judgment in part and deny it in part, dismissing Defendant Youngert from Plaintiff's conspiracy claim and allowing Plaintiff's retaliation and conspiracy claims against Defendants Fenby and Williams—both based on the same conduct of increasing Plaintiff's security level and transferring him to a Level V facility—to proceed. (*Id.* at PageID.677–82.) On September 4, 2020, the Court adopted the 2020 R&R. (ECF No. 84.) Subsequently, the Court appointed Plaintiff counsel and entered a Second Amended Case Management Order (ECF No. 747), which provided for an additional period for discovery and a second round of dispositive motions. At this juncture, Plaintiff's remaining claims are that: (1) Defendants Williams and Fenby retaliated against Plaintiff for filing the July 25, 2014 Youngert

grievance; and (2) Defendants Williams and Fenby conspired to increase Plaintiff's security level. (ECF No. 78 at PageID.678–82.)

Because the Court previously found that genuine issues of material fact remained, the question posed by the instant motion is whether discovery has resulted in a material change in the record such that summary judgment is now warranted. For the reasons that follow, I conclude that discovery has resulted in further development of the factual record that now warrants a fresh look at Plaintiff's claims and summary judgment for Defendants. Accordingly, pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that Defendants' motion be **GRANTED,** and that Plaintiffs' amended complaint be **dismissed with prejudice**.

## I. Background

Most of the pertinent facts—including a basic explanation of the MDOC's procedure for conducting a Security Classification Screen—are set forth in the 2020 R&R, and familiarity with them will be assumed. To aid the analysis that follows, however, I will review the operative events leading up to Plaintiff's claims, as well as some of the procedural history of this case.

Plaintiff transferred from Chippewa Correctional Facility (URF) to DRF in early 2014. Prior to his transfer, corrections officials at URF performed a Security Classification Screen indicating that Plaintiff had 35 Management Level points, resulting in a Level V Management Level. The authorizing official departed downward, however, and assigned Plaintiff a True Security Level of IV, noting that "[p]risoner can be managed in reduced custody security level." (ECF No. 54-9.)

On July 6, 2014, Plaintiff filed a grievance against now-dismissed Defendant Osbourne for "further retaliatory harassment." (ECF No. 8 at PageID.56.) On July 25, 2014, Plaintiff filed a grievance against now-dismissed Defendant Youngert based on conduct that occurred on July 22,

2014. (*Id.* at PageID.56–57.) On or before July 30, 2014, Defendant Fenby notified now-dismissed Defendant Assistant Resident Unit Supervisor (ARUS) Jennifer Gehoski that Plaintiff needed to be transferred. ARUS Gehoski, in turn, provided this information to MDOC transfer coordinator Leik and stated that Defendant Williams had confirmed that, as of July 30, 2014, Plaintiff had 30 Management Level Points. (ECF No. 54-2 at PageID.407; ECF No. 54-3.) Defendant Fenby made the decision to increase Plaintiff's True Security Level from IV to V due to Plaintiff's points and his behavior while incarcerated at DRF, which included a misconduct that Plaintiff had received on May 14, 2014. (ECF No. 107-2 at PageID.796; ECF No. 56 at PageID.552.) In addition, in April 2014, Plaintiff had been transferred within DRF from Unit 1200 to Unit 500 because of a report that he had been stalking ARUS Gehoski in the 1200 Unit. (ECF No. 107-4; ECF No. 56 at PgeID.552.)

On August 12, 2014, transfer coordinator Leik sent an email to various MDOC personnel, including Defendants Williams and Fenby, stating that Plaintiff would be transferring to Marquette Branch Prison's (MBP) Level V general population on August 26, 2014. (ECF No. 54-2 at PageID.407; ECF No. 54-7.) That same day, Defendant Williams completed a Security Classification Screen in connection with Plaintiff's upcoming transfer to MBP. (ECF No. 54-4.) Defendant Williams completed the screen as part of his responsibility for prisoners housed in DRF's 500 Unit. (ECF No. 107-3 at PageID.807–08.) Defendant Williams was not involved in any other aspect of the transfer, as he played no part in prisoners' security classifications and was not involved in facility-to-facility transfer decisions. (*Id.* at PageID.806.) Plaintiff was transferred to MBP on August 27, 2014. (ECF No. 54-10.) L. Heinritz, who approved the transfer order, noted that "[p]risoner has 30 points, per Deputy to be place [sic] in Level V." (*Id.*)

3

In his amended complaint—the operative pleading in this case—Plaintiff alleged that on July 25, 2014, he filed Grievance DRF-14-07-1592-17C (the 1592 Grievance) against now-dismissed Defendant Youngert for Defendant Youngert's conduct on July 22, 2014. (ECF No. 8 at PageID.56–57.) Plaintiff further alleged that on August 7, 2020, he filed another grievance against Defendants Youngert, Williams, and Fenby based on Youngert and Williams conspiring to retaliate against Plaintiff for the 1592 Grievance against Youngert by increasing his security classification and Fenby's making the following "veiled threat" to effectuate Youngert's and Williams's retaliation: "[T]his don't sound right [the recommendation by defendant Williams], but you can believe I'm gonna' lay you down." (*Id.* at PageID.57.) Plaintiff further alleged that he wrote another grievance against Youngert on August 19, 2014, Grievance DRF-14-08-1796-26A (the 1796 Grievance), and that after the 1796 Grievance was assigned to Resident Unit Manager J. Dunigan, Defendants Williams and Fenby increased Plaintiff's security classification and transferred him to a Level V facility. (*Id.* at PageID.58.) Plaintiff claimed that Defendant Williams violated his right to be free from unlawful retaliation "by conspiring and attempting to have my security classification increased for illegitimate reasons, in retaliation for me filing grievances against his immediate subordinate Officer, defendant Youngert." (*Id.* at PageID.60–61.) In subsequent filings, Plaintiff again referred to the 1592 Grievance as the motivation for Defendants' alleged retaliatory increase of his custody security level. (ECF No. 24 at PageID.236–37; ECF No. 32 at PageID.280–81 .) Accordingly, in the 2020 R&R, I concluded that "an issue of fact remains as to whether Defendants Williams and Fenby retaliated against Plaintiff for filing a grievance on July 25, 2014." (ECF No. 78 at PageID.783.) In addressing Defendants' temporal proximity argument, I specifically referenced the July 25, 2014 grievance against Defendant Youngert as the

impetus for the alleged retaliatory security screen that Defendant Williams completed on August 12, 2014. (*Id.* at PageID.679.)

On April 12, 2021, Defendants conducted Plaintiff's video deposition. Plaintiff testified that the so-called "lay you down" meeting with Fenby did not occur on July 31, 2014, as he had previously asserted, but instead occurred on July 15, 2014.[1] Plaintiff said that "this was subsequently right after the ethnic intimidation grievance that I wrote against [previously-dismissed] Defendant Osbourne." (ECF No. 107-5 at PageID.816.) Plaintiff said that, after he filed the grievance against Defendant Osbourne, Defendant Williams asked Defendant Fenby to reclassify Plaintiff to level V. Plaintiff said that Defendant Fenby then called Plaintiff to an "informal hearing or meeting" on July 15, 2014, in which he told Plaintiff that "there was nothing there that would warrant him actually reclassifying me." (*Id* at PageID.817.) Nonetheless, according to Plaintiff, Fenby said, "This doesn't sound right, but, you know, you can believe I'm going to lay you down." (*Id.*)

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

---

[1] Plaintiff did not specifically reference the date of Fenby's alleged "lay you down" comment in his amended complaint. (ECF No. 8 at PageID.57.) In his August 7, 2014 grievance, however, Plaintiff said that Fenby first interviewed him on July 31, 2014. Plaintiff also mentioned the "lay you down" comment, but it is unclear whether he was claiming that Fenby made the "lay you down" comment at the end of the July 31 interview or at a later time. (ECF No. 15-1 at PageID.158.)

5

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III.    Discussion

#### A.    Retaliation Claim

Plaintiff must establish the following for his retaliation claim: (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In addition, a plaintiff must be able to prove that the protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendants' motion focuses solely on the third element, the requisite causal connection between the protected conduct and the alleged retaliatory act. Defendants contend that Plaintiff's admission in his deposition that Defendant Fenby made the "lay you down" comment during a July 15, 2014 meeting conclusively refutes Plaintiff's retaliation claim because it shows that the issue of transferring Plaintiff to a level V facility had been broached well before, and independent of, the July 25, 2014 Youngert grievance. Thus, Defendants argue, as a matter of law, Plaintiff cannot establish a causal connection between the Youngert grievance and the alleged adverse action.

If Plaintiff's claim depends on the July 25, 2014 Youngert grievance—as Plaintiff has repeatedly alleged throughout this case—he cannot establish a causal connection to support his retaliation claim because his own testimony shows that Williams had already recommended that Fenby consider transferring Plaintiff to a Level V facility ten days before Plaintiff filed the Youngert grievance. *See*, *e.g., Feliz v. Taylor*, 49 F. App'x 3, 6 (6th Cir. 2002) ("It is apparent that there was no causal connection between Feliz's first grievance and the initial unfavorable evaluation because the evaluation preceded the grievance by one week."); *Martinez v. Hiland*, No. 5:13-CV-P182, 2017 WL 4799861, at *9 (W.D. Ky. Oct. 24, 2017) (holding that no reasonable jury could conclude that the plaintiff's grievance motivated the defendant to not renew the plaintiff's prescription because the plaintiff was first taken off his prescription and denied a renewal well before the grievance was filed); *Fitts v. Snyder*, No. 12-13575, 2016 WL 633957, at *2 n.2 (E.D. Mich. Feb. 11, 2016), *report and recommendation adopted*, 2016 WL 3180189 (E.D. Mich. June 8, 2016) ("[T]he evidence shows that Vives began tapering Fitts's medication before the February 2012 grievance and months before the April 2012 grievance, so there is no causal connection between the tapering of the medications and the grievances.").

Plaintiff contends that his testimony provides no basis for summary judgment, however, because whether the "lay you down" meeting occurred on July 15, 2014, as Plaintiff testified, is a factual question that precludes summary judgment. (ECF No. 114 at PageID.929.) That is incorrect. Even if Defendant Fenby denies making the "lay you down" comment or even that such meeting occurred, the Sixth Circuit has held that where the plaintiff's deposition testimony contradicts his complaint allegations, the court should credit the later testimony in ruling on a motion for summary judgment. *Leary v. Livingston Cnty.*, 528 F.3d 438, 444 (6th Cir. 2008) ("A claimant may not create a triable issue of fact by saying one thing in a complaint and something

7

else in a deposition."). In addition, in deciding a motion for summary judgment, a court is generally obligated to view the facts and draw reasonable inferences in favor of the non-moving party. *Pennington v. Terry*, 644 F. App'x 533, 538 (6th Cir. 2016) (citing *Harrow Prods., Inc. v. Liberty Mut. Ins. Co.*, 64 F.3d 1015, 1019 (6th Cir. 1995)). As set forth above, Plaintiff unequivocally testified that Fenby made the "lay you down" comment on July 15, 2014. Plaintiff also contends that summary judgment is unwarranted because the Youngert grievance "could . . . have played a role in the August 12, 2014 decision to transfer him to a Level V facility." (ECF No. 114 at PageID.931.) "[C]ould have" is the operative phrase in the argument, which ignores the evidence cited above that Fenby had initiated the transfer approximately two weeks before Williams prepared the transfer screen and that the idea of a transfer had percolated well before the Youngert grievance. More importantly, there is no evidence in the record that the Youngert grievance influenced Fenby's transfer decision in any manner. Thus, under Plaintiff's own version of events, the Youngert grievance could not have motivated the increase in Plaintiff's security classification and related transfer.

As noted above, at his deposition, Plaintiff pivoted to the Osbourne grievance as the motivation for the alleged retaliation, stating that "when I wrote Defendant Osbourne up for ethnic intimidation, Defendant Williams put in a reclassification screen." (ECF No. 107-5 at PageID.816.) Defendants argue, correctly, that Plaintiff has never mentioned the Osbourne grievance in connection with his retaliation claim against Defendants Williams and Fenby in this case and that the Court should not permit Plaintiff to change his theory at this juncture. Alternatively, Defendants argue that, even if the Court allows Plaintiff to assert his claim based on the Osbourne grievance, the claim fails because: (1) the Osbourne grievance was frivolous and thus cannot be considered protected conduct; and (2) there is no evidence that Defendant Fenby

was aware of the Osbourne grievance. (ECF No. 107 at PageID.776–78.) Plaintiff responds that nothing precludes him from relying on the Osbourne grievance because he has never limited his claim to the Youngert grievance but instead has always maintained that Defendants retaliated against him based on multiple grievances, as well as his "persistent use of the grievance procedure" in general. (ECF No. 114 at PageID.929–31; ECF No. 8 at PageID.61.) Plaintiff further disputes that the Osbourne grievance was frivolous, (ECF No. 114 at PageID.931–32), although he points to no evidence that Defendant Fenby was aware of it.

There is no need to consider whether Plaintiff is estopped or precluded from relying on the Osbourne Grievance, or whether it is frivolous, because Plaintiff fails to present sufficient evidence of a causal connection between that grievance and the increase in Plaintiff's security level/transfer to MBP. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)).

First, Plaintiff presents no evidence that either Defendant mentioned the Osbourne grievance, the Youngert grievance, or Plaintiff's grievance activity in general in connection with the increase in Plaintiff's security classification or his transfer to MBP. It is also notable that neither Defendant was named in the Osbourne or Youngert grievances and, as set forth above, there is no evidence that Defendant Fenby was even aware of the Osbourne grievance. These circumstances, alone, suggest that Defendant were not motivated by retaliatory animus. While

9

Plaintiff alleged in his amended complaint that Defendant Williams retaliated against him "by conspiring and attempting to have my security classification increased for illegitimate reasons, in retaliation for me filing a grievance against his immediate subordinate officer, defendant Youngert" (ECF No. 8 at PageID.61), this was a mere conclusory allegation and remains so given Plaintiff's failure to present admissible evidence establishing it as a fact.

Second, Plaintiff alleged that Defendant Fenby's "lay you down" comment was a "veiled threat to effectuate defendant[] . . . Williams' retaliation." (ECF No. 8 at PageID.57.) As it turns out, this alleged threat was so "veiled" that Plaintiff had no clue what Fenby meant. When asked about his interpretation, Plaintiff stated, "Honestly I didn't know. I mean, it had – it was – it was so ambiguous and with the type of – you know, the type of shenanigans that I was incurring, I really didn't know." (ECF No. 107-5 at PageID.817.) Plaintiff also presents no evidence or argument that the phrase "lay you down" had an understood meaning in the prison context relating to retaliation. Thus, Plaintiff's assertion that Fenby's alleged comment had anything to do with retaliation or putting Williams and Youngert's alleged retaliatory plan into motion is nothing more than speculation. *Cf. Johnson v. Govern*, No. 2:17-CV-125, 2018 WL 6321548, at *2 (W.D. Mich. Dec. 4, 2018) (concluding that the defendant's threat to "put a case" on the plaintiff was too vague to constitute adverse action).

Third, I revisit my rationale in the 2020 R&R in light of Defendant Fenby's deposition testimony. In particular, I concluded that an inference of retaliatory motive could be drawn from a comparison of Defendants' assessment of a True Security Level of V for Plaintiff on the August 12, 2014 security screen with Plaintiff's security level history since 2010, during which Plaintiff's True Security and Actual Placement Levels were IV, even though Plaintiff had multiple misconducts and more management level points. (ECF No. 78 at PageID.680.) In other words,

Defendants applied a less-forgiving standard than other prison officials at different facilities who had completed security screens for Plaintiff. I thus concluded that "[g]iven Plaintiff's consistent Level IV designation, a reasonable jury could conclude that Defendants were motivated not by the single misconduct for forgery but, rather, by retaliatory animus." (*Id.*)

Defendant Fenby's testimony exposes the flaw in this reasoning. He stated that the decision to grant a departure from the prisoner's True Security Level is a matter committed to the discretion of the reviewing deputy warden, the warden, and classification in Lansing. (ECF No. 114-2 at PageID.941.) In other words, there is no MDOC rule or policy that mandates a particular result. For example, a prisoner's classification at one facility—based on his conduct at that facility—might be different than that at another facility. (*Id.* at PageID.941–42.) Because there is no across-the-board standard for all MDOC facilities, and the decision to depart from the True Security Level is a matter of discretion, decisionmakers at different facilities may reach different conclusions as to whether a departure is warranted. Comparing one official's subjective departure decision at a particular facility against another official's decision at another facility thus reveals little or nothing about retaliatory motive. As an analogy, in the employment context, courts have observed that a plaintiff's disparate performance evaluations by different supervisors do not necessarily reflect discriminatory animus because the supervisors might have had "different management styles, expectations, and standards that influenced their views of [the plaintiff's] performance." *Novara v. SpartanNash Assocs., LLC*, No. 1:16-CV-838, 2017 WL 4285439, at *5 (W.D. Mich. Sept. 27, 2017) (citing *Wright v. Sears, Roebuck & Co.*, 81 F. App'x 37, 42 (6th Cir. 2003) (stating that "affidavits from prior district store managers do not demonstrate that plaintiffs are meeting the current expectations of the position, which expectations may have changed over time or with new management")). Similarly, comparing Defendant Fenby's decision that a departure was not

warranted with another official's previous decision that a departure was warranted yields no proof of retaliatory animus.

What is left, then, is temporal proximity. In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Here, Plaintiff offers nothing more than the ultimate fact of retaliation. He provides no evidence creating an inference that the Osbourne grievance motivated Defendants' actions. Moreover, assuming that temporal proximity, alone, could have sufficed to establish a causal connection between the Youngert grievance and the adverse action, such connection is now more attenuated given Plaintiff's reliance on the earlier Osbourne grievance. And it bears repeating that the Sixth Circuit has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). Temporal proximity is even more problematic in this case because Plaintiff, a prolific filer of grievances, filed at least 24 of them at DRF between March and August 2014. (ECF No. 54-8.) Thus, temporal proximity is an even weaker basis here to support a causal connection. *See Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews").

Accordingly, summary judgment is proper as to this claim.

### B. Conspiracy Claim

I also recommend that summary be granted on Plaintiff's conspiracy claim. A civil conspiracy under Section 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). Here, the only evidence in the record shows that Defendants Williams and Fenby did nothing more than perform their respective duties within the scope of their employment with the MDOC. Plaintiff's evidence falls short of establishing the requisite agreement to support a conspiracy.[2] Moreover, in light of the foregoing recommendation to dismiss the retaliation claims, Plaintiff's conspiracy claim necessarily fails.[3] *See Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009) ("Wiley cannot succeed on a conspiracy claim because there was no underlying constitutional violation that injured her.").

### IV. Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendants' Motion for Summary Judgment (ECF No. 106) and dismiss Plaintiff's complaint **with prejudice**.

Dated: September 2, 2021

/s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge

---

[2] The intracorporate conspiracy doctrine, which Defendants did not raise, provides an additional ground for dismissal of the conspiracy claim. The doctrine provides that if "all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.*, 926 F.2d 505, 510 (6th Cir. 1991). The Sixth Circuit extended the doctrine to claims under 42 U.S.C. § 1983 in *Jackson v. City of Cleveland*, 925 F.3d 793, 817-19 (6th Cir. 2019). The *Jackson* court said that, unless members of the same collective entity are acting outside the scope of their employment, they are deemed to be one collective entity and not capable of conspiring. *Id.* at 819. Here, Plaintiff has alleged no fact indicating that either Defendant was acting outside the scope of his employment with the MDOC.

[3] Because I recommend summary judgment on other grounds, I need not address Defendants' qualified immunity argument.

## **NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).